## EZRA TRULL *et al. versus* WOODHOUSE L. WHEELER *et al.*

Upon the division of Boston into wards in 1822, a part of the boundary line of the fifth ward was described, in the return of the selectmen, as running " *by the river,*" which was a navigable arm of the sea ; and by *St.* 1822, *c.* 86, (passed in 1823,) the prison limits of Suffolk county, in respect to certain contracts, were declared to be coextensive with the exterior boundary of the fifth ward of Boston, "as the same is now defined." It was *held,* that such prison limits did not extend into the river, beyond low-water mark.

Evidence, that prisoners entitled to the privilege of the jail yard in the county of Suffolk had been accustomed, from the time when such limits were established, to go to certain places between low-water mark and the thread of the river, as being within the bounds of the fifth ward, is incompetent to control the construction of the statute and of the return of the selectmen, all the proceedings being recent.

DEBT upon a bond given to the plaintiffs, in June 1836, by Woodhouse L. Wheeler, as principal, and Daniel Draper, as surety, and conditioned, that the principal should continue a true prisoner, within the limits of the prison, until lawfully discharged.

At the trial, before *Wilde* J., it appeared that Wheeler, at the time of the execution of the bond, stood committed in the county of Suffolk, on an execution issued in favor of the plaintiffs, upon a judgment founded on a contract entered into previously to the 2d of April, 1834 ; that in regard to such contracts the limits of the jail yard of Suffolk were declared by *St.* 1822, *c.* 86, passed in February 1823, to be " coextensive with the exterior boundary of Ward No. 5, of the city of Boston, as the same is now defined "; that by *St.* 1821, *c.* 110, § 2, establishing the city of Boston, it was made the duty of the selectmen of the town to divide it into twelve wards ; that this was done accordingly on the 13th of March, 1822 ; that, in the return of the selectmen, the boundary line of the fifth ward was defined as running through Cambridge street "to West Boston Bridge, thence *by the* [Charles] *river* to Causeway street."

The plaintiffs introduced evidence tending to show, that Wheeler, while under such bond, was several times on the draw wharves of Craigie's bridge and the Lowell railroad bridge on the Boston side of the channel of Charles River,

and once on the Boston side of the draw of Craigie's bridge, all of which places were below low-water mark. The defendants offered to prove, that prisoners upon the limits in Suffolk, had been accustomed from the time when such limits were established, to go to those places as being within the bounds of the ward. This evidence was rejected as incompetent.

The counsel for the defendants contended, that the division line between the counties of Suffolk and Middlesex was the channel or thread of Charles River ; that on that line the city of Boston was coextensive with the county of Suffolk ; and that the limits of Ward No. 5, were coextensive with those of the city. But for the purposes of the trial, the judge instructed the jury, that if the prisoner was, at any time, beyond low-water mark, he was out of the limits of Ward No. 5, and, of course, had committed an escape ; that what constituted the limits of the jail or ward, was a question of law ; and that low-water mark, so far as such ward was bounded by Charles River, was the boundary line of the ward on that side.

The jury returned a verdict for the plaintiffs.

The defendants excepted to the ruling and instructions of the judge.

*H. H. Fuller* and *Washburn*, for the defendants, to the point, that the limits of the ward extended to the thread of Charles River, cited *St.* 1794, *c.* 31, § 3 ; *St.* 1808, *c.* 92 ; *Baxter* v. *Taber*, 4 Mass. R. 361 ; 3 Kent's Comm. 345 ; *Lunt* v. *Holland*, 14 Mass. R. 149 ; *Handly* v. *Anthony*, 5 Wheaton, 374 ; *Ipswich, Petitioners*, 13 Pick. 431 ; and that the evidence of usage, offered by the defendants, was competent, *Cortelyou* v. *Van Brunt*, 2 Johns. R. 357 ; *Handly* v. *Anthony*, 5 Wheaton, 384.

*Bartlett*, for the plaintiffs, cited Revised Stat. *c.* 14, § 1, 2 ; *Commonwealth* v. *Charlestown*, 1 Pick. 180 ; Wheaton's Elem. Internat. Law, 142 ; Hargrave's Law Tracts, 12.

SHAW C. J. It is manifest, we think, that by the very precise words used in the act, adopting Ward 5, " as the same is *now* defined," the legislature must be considered as having had reference to the actual laying out, and description of the ward, by the selectmen, in March 1822 ; and whether the selectmen, in making that distribution of the city into wards, precisely pur-

*Trull*
*v.*
*Wheeler.*

*June 28th.*

*July 1st.*

sued their authority, or executed their whole authority, or not, is immaterial to the purposes of the present inquiry. It is certainly a matter of some surprise, that the whole territory of the city is not included in some of the wards, or in other words, that the aggregate of the territory of all the wards as described, is not coextensive with the whole territory of the city ; but it seems manifest, that it is not. It seems that the common is not included in any ward, portions of the flats, waters and uninhabited lands, are not included ; and the same is probably true of some of the squares and open spaces. And it may admit of question, whether the territory of streets adopted as boundaries of wards, are included. To ascertain what Ward No. 5 was, as then defined, we must resort to the particular description by which it was so defined. That description is set forth in the report. The terms on which this question depends are, " to West Boston bridge, thence by the river to Causeway street."

This place being tide-water, a broad navigable river or arm of the sea, the Court are of opinion, that the terms, " by the river," cannot be construed to extend below or beyond the low-water mark, and that the direction in this respect was right.

An objection was taken to the direction of the judge in one other particular. Evidence was offered to show, that prisoners entitled to the liberties of the prison limits, had been accustomed to go to the places mentioned, as being within the limits of the ward, which was rejected. This evidence, we think, was rightly rejected. Here the question depended upon the terms of the statute, and of the written return of the proceedings of the selectmen, entered in a book, kept for that purpose ; and all their proceedings were recent. Upon the true construction of these the question depended. Now all that the evidence offered tended to show, was a reputation, and that for a short period, of the actual and legal limits of the ward, which was inadmissible to control the operation of the statute and the written evidence of the proceedings of the selectmen. Where the question is of an ancient boundary, evidence of reputation is admissible ; but the rule does not apply to a case like this.